

 **First National Bank of Olathe**

# NOTE, DISCLOSURE AND SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58,104.00 | 05-01-2008 | 08-01-2008 | ****2630 | RC-C.6a / 6 | 2334 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Blair H Auld
P.O. Box 4047
Olathe, KS 66063

**Lender:** The First National Bank of Olathe
BR-1
444 E Santa Fe
PO Box 1500
Olathe, KS 66051-1500

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 4.730% | $691.52 | $58,004.00 | $58,695.52 |

**PAYMENT SCHEDULE.** My payment schedule will be one payment of $58,695.52 on August 1, 2008.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in the goods or property being purchased. In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**PREPAYMENT.** If I pay off early, I will not be entitled to a refund of the prepaid finance charges, and I will not have to pay a penalty.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

### Amount Financed Itemization

| | | |
|---|---|---|
| Amount paid to me directly: $58,000.00 Lender's Check # 53441 | | $58,000.00 |
| Other Charges Financed: $4.00 Title Registration | | $4.00 |
| Total Financed Prepaid Finance Charges: | | $100.00 |
| Note Principal: | | $58,104.00 |
| Prepaid Finance Charges: | | $100.00 |
| Financed: $100.00 Loan Origination Fee | $100.00 | |
| Amount Financed: | | $58,004.00 |

**Principal Amount: $58,104.00**   **Interest Rate: 4.050%**   **Date of Agreement: May 1, 2008**

**PROMISE TO PAY.** I ("Borrower") promise to pay to The First National Bank of Olathe ("Lender") or order, in lawful money of the United States of America, the principal amount of Fifty-eight Thousand One Hundred Four & 00/100 Dollars ($58,104.00), together with interest at the rate of 4.050% per annum on the unpaid principal balance from May 1, 2008, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $58,104.00 plus interest on August 1, 2008. This payment due on August 1, 2008, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied to Interest, Principal, Loan Fees, Pass Through, Escrow. Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The First National Bank of Olathe, BR-1, 444 E Santa Fe, PO Box 1500, Olathe, KS 66051-1500.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will continue to accrue interest at the interest rate under this Agreement.

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under this Agreement:

**2008 Ford Mustang Shelby (VIN 1ZVHT88S686139592)**

In addition, the word "Property" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car; a motor attached to a boat; or appliances and fixtures attached to a mobile home), whether added now or later.

(B) All products and produce of any of the property described in this Property section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Property section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Property section, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Property section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of my right, title, and interest in and to all computer software required to utilize,

Case 10-24385   Doc# 22-1   Filed 02/02/11   Page 1 of 19

create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of me to Lender, then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth-in-Lending disclosures are delivered.

**FUTURE ADVANCES.** This Property secures all future advances made by Lender to me regardless of whether a) Lender is required by any agreement with me to extend the advance or b) the advance is made for the same purposes.

**GRANT OF SECURITY INTEREST.** To secure payment of the indebtedness and performance of my obligations under this Agreement, I grant to Lender a security interest in all the Property described above. I understand that the following statements set forth my responsibilities, as well as Lender's rights, concerning the Property. I agree as follows:

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property, unless and until all the Indebtedness is paid in full.

**Location of the Property.** Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at those addresses except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Lender may file a copy of this Agreement as a financing statement. If I change my name or address, or the name or address of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under this Agreement from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of this Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of this Agreement; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** I fail to make any payment when due under this Agreement.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** I die or become incompetent or insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Agreement is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do. In addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property; and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Agreement if I do not pay. I will be liable for these costs of collection for this Agreement, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection

Case 10-24385   Doc#22-1   Filed 02/02/11   Page 2 of 19

agency fees.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $20.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Agreement shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

> **Agreement.** The word "Agreement" means this Note, Disclosure and Security Agreement, as this Note, Disclosure and Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Note, Disclosure and Security Agreement from time to time.

> **Borrower.** The word "Borrower" means Blair H Auld, and all other persons and entities signing the Note.

> **Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

> **Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents.

> **Lender.** The word "Lender" means The First National Bank of Olathe, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

> **Note.** The word "Note" means the note or credit agreement dated May 1, 2008, in the principal amount of $58,104.00 from Blair H Auld to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

> **Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

> **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I AGREE TO THE TERMS OF THE AGREEMENT.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE, DISCLOSURE AND SECURITY AGREEMENT.**

**BORROWER:**

X _____
  Blair H Auld

**LENDER:**

**THE FIRST NATIONAL BANK OF OLATHE**

X _____
  Deborah Newton, Retail Banking Officer

LASER PRO Lending, Ver. 6.40.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - KS NACFI\LPL\D20.FC TR-1007705 PR-59



OOCCOOOOOO0420263009600711200B

 First
National
Bank of Olathe

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58 104 00 | 07 11-2008 | 08 01 2008 | ▓▓2630 | RC C 6a / 5 | 2334 | *** | |

References in the boxes above are for Lender s use only and do not limit the applicability of this document to any particular loan or item
Any item above containing     has been omitted due to text length limitations

**Borrower**  Blair H Auld
P O Box 4047
Olathe  KS  66063

**Lender**  The First National Bank of Olathe
BR 1
444 E Santa Fe
PO Box 1500
Olathe  KS  66051 1500

**Principal Amount  $58 104 00**          **Interest Rate  4 050%**          **Date of Agreement  July 11  2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS**  Promissory Note dated May 1  2008 in the Original Amount of $58 104 00 with a Current Outstanding Balance of $58 104 00 and all amendments  modifications  extensions  renewals  replacements  riders and substitutions thereof

**DESCRIPTION OF COLLATERAL**  Security Agreement dated July 11  2008 in the name of Blair H  Auld securing a 2008 Ford Mustang Shelby VIN  1ZVHT88S18566537

**DESCRIPTION OF CHANGE IN TERMS**  Remove 2008 Ford Mustang Shelby with VIN  1ZVHT885685139592 as collateral and add a 2008 Ford Mustang Shelby with VIN  1ZVHT88S185166537

**CONTINUING VALIDITY**  Except as expressly changed by this Agreement  the terms of the original obligation or obligations  including all agreements evidenced or securing the obligation(s)  remain unchanged and in full force and effect  Consent by Lender to this Agreement does not waive Lender s right to strict performance of the obligation(s) as changed  nor obligate Lender to make any future change in terms  Nothing in this Agreement will constitute a satisfaction of the obligation(s)  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s)  including accommodation parties  unless a party is expressly released by Lender in writing  Any maker or endorser  including accommodation makers  will not be released by virtue of this Agreement  If any person who signed the original obligation does not sign this Agreement below  then all persons signing below acknowledge that this Agreement is given conditionally  based on the representation to Lender that the non signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it  This waiver applies not only to any initial extension  modification or release  but also to all such subsequent actions

| My Initials | **NO ORAL AGREEMENTS**  This written agreement is the final expression of the agreement between Lender and me and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and me |
|---|---|
| Lender s Initials | **NONSTANDARD TERMS**  The following  space  contains  all  nonstandard  terms  including  all  previous  oral agreements  if any  between Lender and me |
|  | By initialing the boxes to the left  Lender and I affirm that no unwritten oral agreement exists between us |

This Notice is required by Kansas law  In this Notice the term  you  means the Borrower named above

**NOTICE TO CONSUMER**  1  Do not sign this Agreement before you read it  2  You are entitled to a copy of this Agreement  3  You may prepay the unpaid balance at any time without penalty

PRIOR TO SIGNING THIS AGREEMENT  I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT  I AGREE TO THE TERMS OF THE AGREEMENT

BORROWER

X _____
Blair H Auld

LENDER

THE FIRST NATIONAL BANK OF OLATHE

X _____
Deborah Newton  Retail Banking Officer

0000000000042026300270071120008


First
National
Bank of Olathe

# CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58 104 00 | 07-11 2008 | 08 01 2008 | ■■2630 | RC C 6c / 5 | 2334 | * * * | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing ___ has been omitted due to text length limitations

| Grantor | Blair H Auld | | Lender | The First National Bank of Olathe |
|---|---|---|---|---|
| | P O Box 4047 | | | BR 1 |
| | Olathe  KS  66063 | | | 444 E Santa Fe |
| | | | | PO Box 1500 |
| | | | | Olathe  KS  66051 1500 |

THIS CONSUMER SECURITY AGREEMENT dated July 11  2008  is entered into between Blair H Auld (referred to below as  I ) and The First National Bank of Olathe (referred to below as  Lender )

**GRANT OF SECURITY INTEREST**   To secure the Indebtedness described below (including all obligations under the Note and this Agreement) I grant to Lender a security interest in all of the  Property described below   I understand that the following statements set forth my responsibilities  as well as Lender's rights concerning the Property  I agree as follows

**PROPERTY DESCRIPTION**   The word  Property  as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement

   **2008 Ford Mustang Shelby (VIN 1ZVHT88S186166537)**

In addition  the word  Property  also includes all the following  any and all accessions  attachments  accessories  replacements of and additions to any of the property described herein (such as tires or batteries attached to a car  a motor attached to a boat  or appliances and fixtures attached to a mobile home)  whether added now or later  together with all proceeds (including insurance proceeds and refunds of insurance premiums)  if any  and sums due from a third party who has damaged or destroyed the Property or from that party's insurer  whether due to judgment  settlement or other process

Despite any other provision of this Agreement  Lender's not granted  and will not have  a nonpurchase money security interest in household goods  to the extent such a security interest would be prohibited by applicable law   In addition  if Lender is required to give notice of the right to cancel under Truth in Lending  in connection with any additional loans  extensions of credit and other liabilities or obligations of me to Lender  then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth in Lending disclosures are delivered

**FUTURE ADVANCES**   In addition to the Note  this Agreement secures all future advances made by Lender to me regardless of whether a) Lender is required by any agreement with me to extend the advance or b) the advance is made for the same purposes

**RIGHT OF SETOFF**   To the extent permitted by applicable law  Lender reserves a right of setoff in all my accounts with Lender (whether checking  savings  or some other account)  This includes all accounts I hold jointly with someone else and all accounts I may open in the future  However  this does not include any IRA or Keogh accounts  or any trust accounts for which setoff would be prohibited by law   I authorize Lender  to the extent permitted by applicable law  to charge or setoff all sums owing on the Indebtedness against any and all such accounts and  at Lender's option  to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph

**REPRESENTATIONS AND PROMISES WITH RESPECT TO GRANTOR**   I represent and promise to Lender that my correct legal name and address is  Blair H Auld  P O  Box 4047  Olathe  KS  66063

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY**   I represent and promise to Lender that

   **Ownership**   I am the lawful owner of the Property   The Property is free and clear of all loans  liens  security interests  mortgages  claims and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement   I agree to defend Lender's rights in the Property against the claims and demands of all persons   I will not allow any other liens on the Property  even if they are junior to Lender's lien   I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender

   **No Sale**   Without Lender's prior written consent  I  will not sell  lease  transfer  borrow against  or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full

   **Location of the Property**   Except for vehicles  I agree to keep the Property at my address shown above unless Lender tells me I can move it   If the Property is a vehicle  I will keep the Property at those addresses except for routine travel   I will not do anything that requires applying for a certificate of title for the vehicle in another state   If I move from my address shown above to another location within the same state  I may move the Property to my new address  but only if I give Lender the new address in writing prior to my moving   In any event  I agree to keep Lender informed at all times of my current address

   **Maintenance and Insurance**   I will keep the Property in good condition and repair   If the Property is damaged  lost or stolen  I immediately will inform Lender   I will keep the Property fully insured against all loss or damage by fire  theft  collision  and such other hazards as Lender may require from time to time   The insurance will be on terms  including deductible provisions and endorsements  that are satisfactory to Lender  including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice   I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender   I will provide Lender with the original insurance policy  or other proof satisfactory to Lender of the insurance coverage  together with all endorsements required by Lender  including an endorsement naming Lender as the party to whom all losses will be paid   If Lender receives a refund of any insurance premiums  I agree that the refund is Property covered by this Agreement   Lender may apply the refund to payment of any of the Indebtedness   Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness   Until all Indebtedness is paid in full  Lender is authorized  but shall not be required  to file any proof of loss  adjust any loss  receive and receipt for any sum payable  surrender any policy  discharge and release any insurer  endorse any loss or refund check or draft  and in general do in my name  or otherwise  any and all things with respect to the insurance or any insurance proceeds

   **Licensing and Governmental Regulations**   I agree to keep the Property licensed at all times as required by all applicable state and federal laws   In addition  I agree to pay when due all license fees  taxes and assessments relating to the Property or the use of the Property   I further agree that the Property will not be used for any unlawful purpose or in violation of any statute  law  ordinance  or regulation relating to the use  operation  or control of the Property

   **Inspection**   I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located

   **Financing Statements**   I authorize Lender to file a UCC financing statement  or alternatively  a copy of this Agreement to perfect Lender's security interest   At Lender's request  I additionally agree to sign all other documents that are necessary to perfect  protect  and continue Lender's security interest in the Property   I will pay all filing fees  title transfer fees  and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs   Lender may file a copy of this Agreement as a financing statement   If I change my name or address  or the name or address of any person granting a security interest under this Agreement changes  I will promptly notify the Lender of such change

**LENDER'S EXPENDITURES**   If I fail  (A)  to keep the Property free of all taxes  liens  security interests  encumbrances  and other claims  (B)  to provide any required insurance on the Property  or  (C)  to make repairs to the Property  then Lender may do so   If any action or proceeding is commenced that would materially affect Lender's interests in the Property  then Lender on my behalf may  but is not required to  take any action that Lender believes to be appropriate to protect Lender's interests   All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me   All such expenses will become a part of the Indebtedness and  at Lender's option  will  (A)  be payable on demand  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy

or (2) the remaining term of the Note or (C) be treated as a balloon payment which will be due and payable at the Note's maturity The Agreement also will secure payment of these amounts The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had

**DEFAULT** I will be in default if any of the following happens

**Payment Default** I fail to make any payment when due under the Note

**Other Payment Defaults** I fail to make any other payment when due under this Agreement

**Property** The prospect of payment performance or realization of the Property is significantly impaired

**LENDER S RIGHTS** I may keep and use the Property so long as I am not in default under this Agreement If I am in default this is what Lender may do in addition to any other rights Lender may have

**Accelerate Indebtedness** Lender may declare all Indebtedness immediately due and payable without notice

**Other Rights and Remedies** In addition Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law as limited by the Kansas Uniform Consumer Credit Code If the Property contains any goods not covered by this Agreement at the time of repossession I agree that Lender may take such goods provided that Lender makes reasonable efforts to return them to me after repossession If Lender asks me to do so I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me

**Application of Proceeds** If Lender sells the Property Lender will apply the net proceeds of the sale to reduce the amount owed Lender Net proceeds means the sale price less the expenses of repossession repair and sale I agree that to the extent permitted by law I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property

**Notice** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market Lender will give me and other persons as required by law reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition except as otherwise required by applicable law

**MISCELLANEOUS PROVISIONS** The following miscellaneous provisions are a part of this Agreement

**Amendments and Interpretation** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property This Agreement may not be changed except by another written agreement between us (2) If more than one person signs below our obligations are joint and several This means that the words I me and my mean each and every person or entity signing this Agreement and that if Lender brings a lawsuit Lender may sue any one or more of us I also understand Lender need not sue Borrower first and that Borrower need not be joined in any lawsuit (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only They are not to be used to interpret or define the provisions of this Agreement (4) I agree that this Agreement is the best evidence of my agreements with Lender

**Attorneys Fees Expenses** Lender may hire or pay someone else who is not Lender's salaried employee to help enforce this Agreement or to collect the Indebtedness and I shall pay the costs and expenses of such enforcement Costs and expenses include all reasonable costs incurred in the collection of the Indebtedness including but not limited to court costs attorneys fees and collection agency fees except that such costs of collection shall not include recovery of both attorneys fees and collection agency fees nor shall such costs be in excess of fifteen percent (15%) of the unpaid debt after default

**Caption Headings** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement

**Governing Law** This Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law the laws of the State of Kansas without regard to its conflicts of law provisions This Agreement has been accepted by Lender in the State of Kansas

**Choice of Venue** If there is a lawsuit I agree upon Lender's request to submit to the jurisdiction of the courts of Johnson County State of Kansas

**Notices** Any notice required to be given under this Agreement shall be given in writing and shall be effective when actually delivered when actually received by telefacsimile (unless otherwise required by law) when deposited with a nationally recognized overnight courier or if mailed when deposited in the United States mail as first class certified or registered mail postage prepaid directed to the addresses shown near the beginning of this Agreement Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons specifying that the purpose of the notice is to change the person's address For notice purposes I agree to keep Lender informed at all times of my current address Unless otherwise provided or required by law if there is more than one Grantor any notice given by Lender to any Grantor is deemed to be notice given to all Grantors It will be my responsibility to tell the others of the notice from Lender

**No Waiver by Lender** I understand Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right If Lender does agree in writing to give up one of Lender's rights that does not mean I will not have to comply with the other provisions of this Agreement I also understand that if Lender does consent to a request that does not mean that I will not have to get Lender's consent again if the situation happens again I further understand that just because Lender consents to one or more of my requests that does not mean Lender will be required to consent to any of my future requests I waive presentment demand for payment protest and notice of dishonor I waive all rights of exemption from execution or similar law in the Property and I agree that the rights of Lender in the Property under this Agreement are prior to my rights while this Agreement remains in effect

**Severability** If a court finds that any provision of this Agreement is not valid or should not be enforced that fact by itself will not mean that the rest of this Agreement will not be valid or enforced Therefore a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable

**Successors and Assigns** Subject to any limitations stated in this Agreement on transfer of my interest this Agreement shall be binding upon and inure to the benefit of the parties their successors and assigns If ownership of the Property becomes vested in a person other than me Lender without notice to me may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness

**Time is of the Essence** Time is of the essence in the performance of this Agreement

**DEFINITIONS** The following words shall have the following meanings when used in this Agreement

**Agreement** The word Agreement means this Consumer Security Agreement as this Consumer Security Agreement may be amended or modified from time to time together with all exhibits and schedules attached to this Consumer Security Agreement from time to time

**Borrower** The word Borrower means Blair H Auld and includes all co signers and co makers signing the Note and all their successors and assigns

**Grantor** The word Grantor means Blair H Auld

**Indebtedness** The word Indebtedness means the indebtedness evidenced by the Note or Related Documents including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents Specifically without limitation Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon

**Lender** The word Lender means The First National Bank of Olathe its successors and assigns The words successors or assigns mean any person or company that acquires any interest in the Note

**Note** The word Note means the note or credit agreement dated July 11 2008 in the principal amount of $58 104 00 from Blair H Auld to Lender together with all renewals of extensions of modifications of refinancings of consolidations of and substitutions for the note or credit agreement

**Property** The word Property means all of my right title and interest in and to all the Property as described in the Property Description section of this Agreement

**Related Documents** The words Related Documents mean all promissory notes credit agreements loan agreements environmental agreements guaranties security agreements mortgages deeds of trust security deeds collateral mortgages and all other instruments agreements and documents whether now or hereafter existing executed in connection with the Indebtedness

Case 10-13093-dwh2 Doc 32 Filed 02/12/24 with the Indebtedness Page 6 of 19

I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS  THIS AGREEMENT IS DATED JULY 11  2008

This Notice is required by Kansas law   In this Notice the term  you  means the Grantor named above

**NOTICE TO CONSUMER**   1  Do not sign this Agreement before you read it   2  You are entitled to a copy of this Agreement   3  You may prepay the unpaid balance at any time without penalty

**GRANTOR**

X _____
Blair B Auld

**LENDER**

THE FIRST NATIONAL BANK OF OLATHE

By _____
Deborah Newton  Retail Banking Officer



000000000004202630096008062008

First National Bank of Olathe

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58 104 00 | 08 06 2008 | 11 02-2008 | [redacted]2630 | RC C 6c / 5 | 2334 | *** | |

References in the boxes above are for Lender s use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations

**Borrower** Blair H Auld
24750 W 190th Street
Gardner KS 66030

**Lender** The First National Bank of Olathe
BR 1
444 E Santa Fe
PO Box 1500
Olathe KS 66051 1500

**Principal Amount $58 104 00** **Interest Rate 4 050%** **Date of Agreement August 6 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS** Promissory Note dated May 1 2008 in the Original Amount of $58 104 00 with a Current Outstanding Balance of $58 104 00 and all amendments modifications extensions renewals replacements riders and substitutions thereof

**DESCRIPTION OF COLLATERAL** Security Agreement dated July 11 2008 in the name of Blair H Auld securing a 2008 Ford Mustang (VIN 1ZVHT88S185166537) and all amendments modifications extensions renewals replacements riders and substitutions thereof

**DESCRIPTION OF CHANGE IN TERMS** Extend maturity date

**PAYMENT** I will pay this loan in one principal payment of $58 104 00 plus interest on November 2 2008 This payment due on November 2 2008 will be for all principal and all accrued interest not yet paid

**INTEREST CALCULATION METHOD** Interest on this loan is computed on a 365/366 simple interest basis that is by applying the ratio of the interest rate over the number of days in a year (366 during leap years) multiplied by the outstanding principal balance multiplied by the actual number of days the principal balance is outstanding All interest payable under this loan is computed using this method

**CONTINUING VALIDITY** Except as expressly changed by this Agreement the terms of the original obligation or obligations including all agreements evidenced or securing the obligation(s) remain unchanged and in full force and effect Consent by Lender to this Agreement does not waive Lender s right to strict performance of the obligation(s) as changed nor obligate Lender to make any future change in terms Nothing in this Agreement will constitute a satisfaction of the obligation(s) It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s) including accommodation parties unless a party is expressly released by Lender in writing Any maker or endorser including accommodation makers will not be released by virtue of this Agreement If any person who signed the original obligation does not sign this Agreement below then all persons signing below acknowledge that this Agreement is given conditionally based on the representation to Lender that the non signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it This waiver applies not only to any initial extension modification or release but also to all such subsequent actions

| My Initials | **NO ORAL AGREEMENTS** This written agreement is the final expression of the agreement between Lender and me and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and me<br>**NONSTANDARD TERMS** The following space contains all nonstandard terms including all previous oral agreements if any between Lender and me |
|---|---|
| Lender s Initials | By initialing the boxes to the left Lender and I affirm that no unwritten oral agreement exists between us |

This Notice is required by Kansas law In this Notice the term "you" means the Borrower named above

**NOTICE TO CONSUMER 1 Do not sign this Agreement before you read it 2 You are entitled to a copy of this Agreement 3 You may prepay the unpaid balance at any time without penalty**

PRIOR TO SIGNING THIS AGREEMENT I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT I AGREE TO THE TERMS OF THE AGREEMENT

BORROWER

x
Blair H Auld

LENDER

THE FIRST NATIONAL BANK OF OLATHE

x
Deborah Newton Retail Banking Officer





 *000000000004202630095510072008*

First National Bank of Olathe

# NOTE, DISCLOSURE AND SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58,104.00 | 10-07-2008 | 01-07-2009 | [redacted]2630 | RC C 6c / 5 | 2334 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Blair H Auld
P.O. Box 4047
Olathe, KS 66063

**Lender:** The First National Bank of Olathe
BR-1
444 E Santa Fe
PO Box 1500
Olathe, KS 66051-1500

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 5.985% | $876.48 | $58,104.00 | $58,980.48 |

**PAYMENT SCHEDULE.** My payment schedule will be one payment of $58,980.48 on January 7, 2009.

**PROPERTY INSURANCE.** I may obtain property insurance from anyone I want that is acceptable to Lender.

**SECURITY.** I am giving a security interest in 2008 Ford Mustang (VIN 1ZVHT88S185166537). In addition, Lender has also reserved a contractual right of setoff in my deposit accounts.

**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

I will look at my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds.

## Amount Financed Itemization

| | |
|---|---|
| **Amount paid on my account:** | $58,503.72 |
| $58,104.00 Payment on Loan # [redacted]2630 - Principal Balance Renewal | |
| $399.72 Payment on Loan # [redacted]2630 - Interest Due Upon Renewal | |
| **Amount Contributed by me:** | ($399.72) |
| $399.72 Non-Loan Funds Contributed By/For Borrower | |
| **Note Principal:** | $58,104.00 |
| **Prepaid Finance Charges:** | $0.00 |
| **Amount Financed:** | $58,104.00 |

**Principal Amount: $58,104.00** **Interest Rate: 6.000%** **Date of Agreement: October 7, 2008**

**PROMISE TO PAY.** I ("Borrower") promise to pay to The First National Bank of Olathe ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty-eight Thousand One Hundred Four & 00/100 Dollars ($58,104.00), together with interest on the unpaid principal balance from October 7, 2008, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $58,104.00 plus interest on January 7, 2009. This payment due on January 7, 2009, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied to Interest, Principal, Loan Fees, Pass Through, Escrow. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Agreement is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Agreement is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. A partial prepayment will be credited toward payment of future installments. My obligation to make regular installments will resume once the partial prepayment has been fully applied. If the partial prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The First National Bank of Olathe, BR-1, 444 E Santa Fe, PO Box 1500, Olathe, KS 66051-1500.

**INTEREST AFTER DEFAULT.** If Lender declares my entire loan immediately due after a default, or upon final maturity, then the total sum due under this Agreement will accrue interest from the date of acceleration or maturity at the interest rate under this Agreement until paid in full.

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under this Agreement:

**2008 Ford Mustang (VIN 1ZVHT88S185166537)**

In addition, the word "Property" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later.

(B) All products and produce of any of the property described in this Property section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Property section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Property section, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Property section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of my right, title, and interest in and to all computer software required to utilize,

Case 10-24385 Doc# 22-1 Filed 02/02/11 Page 9 of 19

create, maintain, and process any such records or data on electronic media.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, If Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of me to Lender, then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth-in-Lending disclosures are delivered.

**CROSS-COLLATERALIZATION.** In addition to the loan covered by this Agreement, this Agreement secures all amounts I owe to Lender, whether owed now or later. This means that every loan I have now or obtain later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that I may owe to Lender (such as an overdraft on a checking account). However, this Agreement shall not secure any additional loans or obligations if doing so would cause such additional loan or obligation to be subject to the limitations on consumer credit extended to service members, their spouses, and their dependents as provided in 10 U.S.C. Section 987 and its implementing regulations.

**FUTURE ADVANCES.** This Property secures all future advances made by Lender to me regardless of whether a) Lender is required by any agreement with me to extend the advance or b) the advance is made for the same purposes.

**GRANT OF SECURITY INTEREST.** To secure payment of the indebtedness and performance of my obligations under this Agreement, I grant to Lender a security interest in all the Property described above. I understand that the following statements set forth my responsibilities, as well as Lender's rights, concerning the Property. I agree as follows:

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the indebtedness is paid in full.

**Location of the Property.** Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at those addresses except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Lender may file a copy of this Agreement as a financing statement. If I change my name or address, or the name or address of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under this Agreement from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of this Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of this Agreement; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens: (a) **Payment Default.** I fail to make a payment as required by this Agreement. (b) **Other Defaults.** The prospect of payment, performance, or realization of any collateral for this loan is significantly impaired.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law, as limited by the Kansas Uniform Consumer Credit Code. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair and sale. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes all reasonable costs incurred in the collection of this Agreement, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees nor shall such costs be in excess of fifteen percent (15%) of the unpaid debt after default.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $20.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**PRIOR NOTE.** Promissory Note dated May 1, 2008, in the Original Amount of $56,104.00, with a Current Outstanding Balance of $56,104.00.

Case 10-24385   Doc# 22-1   Filed 02/02/11   Page 10 of 19

and all amendments, modifications, extensions, renewals, replacements, riders, and substitutions thereof.

**SUCCESSOR INTERESTS.** The terms of this Agreement shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**APPLICABLE LENDING LAW.** I AGREE THAT, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THIS AGREEMENT IS SUBJECT TO THE KANSAS UNIFORM CONSUMER CREDIT CODE AND THAT THE RATES OF INTEREST ALLOWED BY K.S.A. SECTION 16A-2-401 SHALL APPLY TO THIS LOAN.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Note, Disclosure and Security Agreement, as this Note, Disclosure and Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Note, Disclosure and Security Agreement from time to time.

**Borrower.** The word "Borrower" means Blair H Auld, and all other persons and entities signing the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means The First National Bank of Olathe, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated October 7, 2008, in the principal amount of $58,104.00 from Blair H Auld to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I AGREE TO THE TERMS OF THE AGREEMENT.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE, DISCLOSURE AND SECURITY AGREEMENT.**

This Notice is required by Kansas law. In this Notice the term "you" means the Borrower named above.

**NOTICE TO CONSUMER: 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Agreement. 3. You may prepay the unpaid balance at any time without penalty.**

**BORROWER:**

X _____
Blair H Auld

**LENDER:**

**THE FIRST NATIONAL BANK OF OLATHE**

X _____
Deborah Newton, Retail Banking Officer

LASER PRO Lending, Ver. 6.42.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - KS NACFN\PL1D20.FC TR-1807 PR-35



*0000000000042026300955501062009

 First
National
Bank of Olathe

# NOTE, DISCLOSURE AND SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $58 104 00 | 01-06-2009 | 04 06 2009 | ■■2630 | RC C 6c / 5 | 2334 | *** | |

References in the boxes above are for Lender s use only and do not limit the applicability of this document to any particular loan or item
Any item above containing has been omitted due to text length limitations

**Borrower**  Blair H Auld
24750 W 190th St
Gardner KS 66030

**Lender**  The First National Bank of Olathe
BR 1
444 E Santa Fe
PO Box 1500
Olathe KS 66051 1500

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost me | Amount Financed The amount of credit provided to me or on my behalf | Total of Payments The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|
| 6 000% | $859 62 | $58 104 00 | $58 963 62 |

**PAYMENT SCHEDULE**  My payment schedule will be one payment of $58 963 62 on April 6 2009

**PROPERTY INSURANCE**  I may obtain property insurance from anyone I want that is acceptable to Lender

**SECURITY**  I am giving a security interest in 2008 FORD Mustang V8 (VIN 1ZVHT88S185166537)  In addition Lender has also reserved a contractual right of setoff in my deposit accounts

**PREPAYMENT**  If I pay off early I will not have to pay a penalty

I will look at my contract documents for any additional information about nonpayment default any required repayment in full before the scheduled date and prepayment refunds

### Amount Financed Itemization

| | |
|---|---|
| Amount paid on my account | $58 973 17 |
| $58 104 00 Payment on Loan # ■■2630 Renewal of Principal Balance | |
| $869 17 Payment on Loan # ■■2630 Interest Due Upon Renewal | |
| Amount Contributed by me | ($869 17) |
| $869 17 Non Loan Funds Contributed By/For Borrower | |
| Note Principal | $58 104 00 |
| Prepaid Finance Charges | $0 00 |
| Amount Financed | $58 104 00 |

**Principal Amount  $58 104 00**            **Interest Rate  6 000%**            **Date of Agreement  January 6 2009**

**PROMISE TO PAY**  I ( Borrower ) promise to pay to The First National Bank of Olathe ( Lender ) or order in lawful money of the United States of America the principal amount of Fifty eight Thousand One Hundred Four & 00/100 Dollars ($58 104 00) together with interest on the unpaid principal balance from January 6 2009 calculated as described in the  INTEREST CALCULATION METHOD  paragraph using an interest rate of 6 000% per annum until paid in full  The interest rate may change under the terms and conditions of the  INTEREST AFTER DEFAULT section

**PAYMENT**  I will pay this loan in one principal payment of $58 104 00 plus interest on April 6 2009  This payment due on April 6 2009 will be for all principal and all accrued interest not yet paid  Unless otherwise agreed or required by applicable law  payments will be applied to Interest Principal Loan Fees Pass Through Escrow  I will pay Lender at Lender s address shown above or at such other place as Lender may designate in writing

**INTEREST CALCULATION METHOD**  Interest on this Agreement is computed on a 365/365 simple interest basis  that is  by applying the ratio of the interest rate over the number of days in a year (366 during leap years)  multiplied by the outstanding principal balance  multiplied by the actual number of days the principal balance is outstanding  All interest payable under this Agreement is computed using this method

**PREPAYMENT**  I may pay without penalty all or a portion of the amount owed earlier than it is due  A partial prepayment will be credited toward payment of future installments  My obligation to make regular installments will resume once the partial prepayment has been fully applied  If the partial prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment  I agree not to send Lender payments marked  paid in full  without recourse  or similar language  If I send such a payment Lender may accept it without losing any of Lender s rights under this Agreement  and I will remain obligated to pay any further amount owed to Lender  All written communications concerning disputed amounts  including any check or other payment instrument that indicates that the payment constitutes  payment in full  of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to  The First National Bank of Olathe  BR 1 444 E Santa Fe  PO Box 1500  Olathe  KS 66051 1500

**INTEREST AFTER DEFAULT**  If Lender declares my entire loan immediately due after a default or upon final maturity  then the total sum due under this Agreement will accrue interest from the date of acceleration or maturity at the interest rate under this Agreement until paid in full

**PROPERTY DESCRIPTION**  The word  Property  as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under this Agreement

**2008 FORD Mustang V8 (VIN 1ZVHT88S185166537)**

In addition the word  Property  also includes all the following

(A)  All accessions attachments accessories replacements of and additions to any of the property described herein (such as tires or batteries attached to a car  a motor attached to a boat  or appliances and fixtures attached to a mobile home)  whether added now or later

(B)  All products and produce of any of the property described in this Property section

(C)  All accounts general intangibles instruments rents monies payments and all other rights arising out of a sale lease consignment or other disposition of any of the property described in this Property section

(D)  All proceeds (including insurance proceeds) from the sale destruction loss or other disposition of any of the property described in this Property section and sums due from a third party who has damaged or destroyed the Property or from that party s insurer whether due to judgment settlement or other process

(E)  All records and data relating to any of the property described in this Property section  whether in the form of a writing  photograph microfilm microfiche or electronic media together with all of my right title and interest in and to all computer software required to utilize

create maintain and process any such records or data on electronic media

Despite any other provision of this Agreement Lender is not granted and will not have a nonpurchase money security interest in household goods to the extent such a security interest would be prohibited by applicable law In addition if Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans extensions of credit and other liabilities or obligations of me to Lender then this Agreement shall not secure additional loans or obligations unless and until such notice and all material Truth in Lending disclosures are delivered

**FUTURE ADVANCES** This Property secures all future advances made by Lender to me regardless of whether a) Lender is required by any agreement with me to extend the advance or b) the advance is made for the same purposes

**GRANT OF SECURITY INTEREST** To secure payment of the indebtedness and performance of my obligations under this Agreement I grant to Lender a security interest in all the Property described above I understand that the following statements set forth my responsibilities as well as Lender s rights concerning the Property I agree as follows

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY** I represent and promise to Lender that

**Ownership** I am the lawful owner of the Property The Property is free and clear of all loans liens security interests mortgages claims and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement I agree to defend Lender s rights in the Property against the claims and demands of all persons I will not allow any other liens on the Property even if they are junior to Lender s lien

**No Sale** Without Lender s prior written consent I will not sell lease transfer borrow against or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full

**Location of the Property** Except for vehicles I agree to keep the Property at my address shown above unless Lender tells me I can move it If the Property is a vehicle I will keep the Property at those addresses except for routine travel I will not do anything that requires applying for a certificate of title for the vehicle in another state If I move from my address shown above to another location within the same state I may move the Property to my new address but only if I give Lender the new address in writing prior to my moving In any event I agree to keep Lender informed at all times of my current address

**Maintenance and Insurance** I will keep the Property in good condition and repair If the Property is damaged lost or stolen I immediately will inform Lender I will keep the Property fully insured against all loss or damage by fire theft collision and such other hazards as Lender may require from time to time The insurance will be on terms including deductible provisions and endorsements that are satisfactory to Lender including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer s liability for failure to give such notice I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender I will provide Lender with the original insurance policy or other proof satisfactory to Lender of the insurance coverage together with all endorsements required by Lender including an endorsement naming Lender as the party to whom all losses will be paid

**Inspection** I agree that Lender or Lender s agents shall have the right from time to time to inspect the Property wherever located

**Financing Statements** I authorize Lender to file a UCC financing statement or alternatively a copy of this Agreement to perfect Lender s security interest At Lender s request I additionally agree to sign all other documents that are necessary to perfect protect and continue Lender s security interest in the Property I will pay all filing fees title transfer fees and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs Lender may file a copy of this Agreement as a financing statement If I change my name or address or the name or address of any person granting a security interest under this Agreement changes I will promptly notify the Lender of such change

**LENDER S EXPENDITURES** If I fail (A) to keep the Property free of all taxes liens security interests encumbrances and other claims (B) to provide any required insurance on the Property or (C) to make repairs to the Property then Lender may do so If any action or proceeding is commenced that would materially affect Lender s interests in the Property then Lender on my behalf may but is not required to take any action that Lender believes to be appropriate to protect Lender s interests All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under this Agreement from the date incurred or paid by Lender to the date of repayment by me All such expenses will become a part of the Indebtedness and at Lender s option will (A) be payable on demand (B) be added to the balance of this Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy or (2) the remaining term of this Agreement or (C) be treated as a balloon payment which will be due and payable at the Note s maturity The Agreement also will secure payment of these amounts The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had

**DEFAULT** I will be in default if any of the following happens (a) **Payment Default** I fail to make a payment as required by this Agreement (b) **Other Defaults** The prospect of payment performance or realization of any collateral for this loan is significantly impaired

**LENDER S RIGHTS** I may keep and use the Property so long as I am not in default under this Agreement If I am in default this is what Lender may do in addition to any other rights Lender may have

**Accelerate Indebtedness** Lender may declare all Indebtedness immediately due and payable without notice

**Other Rights and Remedies** In addition Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law as limited by the Kansas Uniform Consumer Credit Code If the Property contains any goods not covered by this Agreement at the time of repossession I agree that Lender may take such goods provided that Lender makes reasonable efforts to return them to me after repossession If Lender asks me to do so I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me

**Application of Proceeds** If Lender sells the Property Lender will apply the net proceeds of the sale to reduce the amount owed Lender Net proceeds means the sale price less the expenses of repossession repair and sale I agree that to the extent permitted by law I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property

**Notice** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market Lender will give me and other persons as required by law reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition except as otherwise required by applicable law

**ATTORNEYS FEES EXPENSES** Lender may hire or pay someone else who is not Lender s salaried employee to help collect this Agreement if I do not pay I will pay Lender that amount This includes all reasonable costs incurred in the collection of this Agreement including but not limited to court costs attorneys fees and collection agency fees except that such costs of collection shall not include recovery of both attorneys fees and collection agency fees nor shall such costs be in excess of fifteen percent (15%) of the unpaid debt after default

**GOVERNING LAW** This Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law the laws of the State of Kansas without regard to its conflicts of law provisions This Agreement has been accepted by Lender in the State of Kansas

**CHOICE OF VENUE** If there is a lawsuit I agree upon Lender s request to submit to the jurisdiction of the courts of Johnson County State of Kansas

**DISHONORED ITEM FEE** I will pay a fee to Lender of $20 00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored

**RIGHT OF SETOFF** To the extent permitted by applicable law Lender reserves a right of setoff in all my accounts with Lender (whether checking savings or some other account) This includes all accounts I hold jointly with someone else and all accounts I may open in the future However this does not include any IRA or Keogh accounts or any trust accounts for which setoff would be prohibited by law I authorize Lender to the extent permitted by applicable law to charge or setoff all sums owing on the indebtedness against any and all such accounts and at Lender s option to administratively freeze all such accounts to allow Lender to protect Lender s charge and setoff rights provided in this paragraph

**SUCCESSOR INTERESTS** The terms of this Agreement shall be binding upon me and upon my heirs personal representatives successors and assigns and shall inure to the benefit of Lender and its successors and assigns

**GENERAL PROVISIONS** If any part of this Agreement cannot be enforced this fact will not affect the rest of the Agreement Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them I and any other person who signs guarantees or endorses this Agreement to the extent allowed by law waive presentment demand for payment protest and notice of dishonor Upon any change in the terms of this Agreement and unless otherwise expressly stated in writing no party who signs this Agreement whether as maker guarantor accommodation maker or endorser shall be released from liability All such parties agree that Lender may renew or extend

(repeatedly and for any length o time) this loan or release any party o guarantor or collateral or impair fail to realize upon or perfect Lender s security interest in the collateral All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made The obligations under this Agreement are joint and several This means that the words I me and my mean each and all of the persons signing below

**APPLICABLE LENDING LAW** I AGREE THAT TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW THIS AGREEMENT IS SUBJECT TO THE KANSAS UNIFORM CONSUMER CREDIT CODE AND THAT THE RATES OF INTEREST ALLOWED BY K S A SECTION 16A 2 401 SHALL APPLY TO THIS LOAN

**DEFINITIONS** The following words shall have the following meanings when used in this Agreement

**Agreement** The word Agreement means this Note Disclosure and Security Agreement as this Note Disclosure and Security Agreement may be amended or modified from time to time together with all exhibits and schedules attached to this Note Disclosure and Security Agreement from time to time

**Borrower** The word Borrower means Blair H Auld and all other persons and entities signing the Note

**Indebtedness** The word Indebtedness means the indebtedness evidenced by the Note or Related Documents including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents

**Lender** The word Lender means The First National Bank of Olathe its successors and assigns The words successors or assigns mean any person or company that acquires any interest in the Note

**Note** The word Note means the note or credit agreement dated January 6 2009 in the principal amount of 958 104 00 from Blair H Auld to Lender together with all renewals of extensions of modifications of refinancings of consolidations of and substitutions for the note or credit agreement

**Property** The word Property means all of my right title and interest in and to all the Property as described in the Property Description section of this Agreement

**Related Documents** The words Related Documents mean all promissory notes credit agreements loan agreements environmental agreements guaranties security agreements mortgages deeds of trust security deeds collateral mortgages and all other instruments agreements and documents whether now or hereafter existing executed in connection with the Indebtedness

PRIOR TO SIGNING THIS AGREEMENT I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT I AGREE TO THE TERMS OF THE AGREEMENT

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS NOTE DISCLOSURE AND SECURITY AGREEMENT

This Notice is required by Kansas law In this Notice the term you means the Borrower named above

**NOTICE TO CONSUMER** 1 Do not sign this Agreement before you read it 2 You are entitled to a copy of this Agreement 3 You may prepay the unpaid balance at any time without penalty

**BORROWER**

X _____
Blair H Auld

**LENDER**

THE FIRST NATIONAL BANK OF OLATHE

X _____
Deborah Newton Retail Banking Officer

*00000000000420263009600501 2009*



First
National
Bank of Olathe

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $58,104.00 | 05-01-2009 | 07-29-2009 | **2630 | RC-0/8C/S | 2334 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Blair H Auld
P.O. Box 4047
Olathe, KS 66063

**Lender:** The First National Bank of Olathe
BR-1
444 E Santa Fe
PO Box 1500
Olathe, KS 66051-1500

---

**Principal Amount: $58,104.00**  ·   · **Interest Rate: 6.000%** .  **Date of Agreement: May 1, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note Dated May 1, 2008, in the Original Amount of $58,104.00, with a Current Outstanding Balance of $58,104.00, and all amendments, modifications, extensions, renewals, replacements, riders, and substitutions thereof.

**DESCRIPTION OF CHANGE IN TERMS.** Extend Maturity Date to July 29, 2009.

**PROMISE TO PAY.** I ("Borrower") promise to pay to The First National Bank of Olathe ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty-eight Thousand One Hundred Four & 00/100 Dollars ($58,104.00), together with interest on the unpaid principal balance from May 1, 2009, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $58,104.00 plus interest on July 29, 2009. This payment due on July 29, 2009, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied to Interest, Principal, Loan Fees, Pass Through, Escrow. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. A partial prepayment will be credited toward payment of future installments. My obligation to make regular installments will resume once the partial prepayment has been fully applied. If the partial prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The First National Bank of Olathe, BR-1, 444 E Santa Fe, PO Box 1500, Olathe, KS 66051-1500.

**INTEREST AFTER DEFAULT.** If Lender declares my entire loan immediately due after a default, or upon final maturity, then the total sum due under this Agreement will accrue interest from the date of acceleration or maturity at the interest rate under this Agreement until paid in full.

**DEFAULT.** I will be in default if any of the following happens: (A) Payment Default. I fail to make a payment as required by this Agreement. (B) Other Defaults. The prospect of payment, performance, or realization of any collateral for this loan is significantly impaired.

**LENDER'S RIGHTS.** If I am in default, Lender may, in addition to any other rights Lender has and subject to any cure and notice provisions of the Kansas Uniform Consumer Credit Code, declare my entire loan immediately due. I will then pay Lender the unpaid part of the Principal Amount, any interest that is earned but unpaid, and any reasonable collection costs.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes all reasonable costs incurred in the collection of this Agreement, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees nor shall such costs be in excess of fifteen percent (15%) of the unpaid debt after default.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $20.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** I acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a motor vehicle described in a Consumer Security Agreement dated May 1, 2009.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**CHOICE OF VENUE.** Unless waived by Originating Institution, in writing, all litigation arising out of or related to this Agreement shall be brought only in the District Court of Johnson County, Kansas, and in no other court or location.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I, and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend

(repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

| | |
|---|---|
| **My Initials**  **Lender's Initials** | **NO ORAL AGREEMENTS.** This written agreement is the final expression of the agreement between Lender and me and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and me.<br><br>**NONSTANDARD TERMS.** The following space contains all nonstandard terms, including all previous oral agreements, if any, between Lender and me:<br><br>By initialing the boxes to the left, Lender and I affirm that no unwritten oral agreement exists between us. |

**APPLICABLE LENDING LAW.** I AGREE THAT, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THIS AGREEMENT IS SUBJECT TO THE KANSAS UNIFORM CONSUMER CREDIT CODE AND THAT THE RATES OF INTEREST ALLOWED BY K.S.A. SECTION 16A-2-401 SHALL APPLY TO THIS LOAN.

**PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I AGREE TO THE TERMS OF THE AGREEMENT.**

This Notice is required by Kansas law. In this Notice the term "you" means the Borrower named above.

**NOTICE TO CONSUMER:** 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Agreement. 3. You may prepay the unpaid balance at any time without penalty.

**BORROWER:**

X _____
Blair H. Auld

**LENDER:**

THE FIRST NATIONAL BANK OF OLATHE

X _____
Deborah Newton, Retail Banking Officer

LASER PRO Lending, Ver. 5.44.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2009 All Rights Reserved. - KS /INCFILPL\D30C.FC TR-1009004 PR-39

Case 10-24385    Doc# 22-1    Filed 02/02/11    Page 16 of 19



*0000000000042026300270050120009*



# CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $58,104.00 | 05-01-2009 | 07-29-2009 | ▉2630 | RC-C 66-76 | 2334 | *** | *** |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

**Grantor:** Blair H Auld
P.O. Box 4047
Olathe, KS 66063

**Lender:** The First National Bank of Olathe
BR-1
444 E Santa Fe
PO Box 1500
Olathe, KS 66051-1500

---

**THIS CONSUMER SECURITY AGREEMENT** dated May 1, 2009, is entered into between Blair H Auld (referred to below as "I") and The First National Bank of Olathe (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** To secure the indebtedness described herein (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights concerning the Property. I agree as follows:

**PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the following described property in which I am giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2008 FORD Mustang-V8 (VIN 1ZVHT88S185166537)**

In addition, the word "Property" also includes all the following: any and all accessions, attachments, accessories, replacements of and additions to any of the property described herein (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from that party's insurer, whether due to judgment, settlement or other process.

Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Property unless and until such a notice is given.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO GRANTOR.** I represent and promise to Lender that my correct legal name and address is: Blair H Auld, P.O. Box 4047, Olathe, KS 66063.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

**Location of the Property.** Except for vehicles, I agree to keep the Property at my address shown above unless Lender tells me I can move it. If the Property is a vehicle, I will keep the Property at those addresses except for routine travel. I will not do anything that requires applying for a certificate of title for the vehicle in another state. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

**Licensing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

**Inspection.** I agree that Lender or Lender's agents shall have the right from time to time to inspect the Property wherever located.

**Financing Statements.** I authorize Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, I additionally agree to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Lender may file a copy of this Agreement as a financing statement. If I change my name or address, or the name or address of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**LENDER'S EXPENDITURES.** If I fail (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on my behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** I will be in default if any of the following happens:

**Payment Default.** I fail to make any payment when due under the Note.

**Other Payment Defaults.** I fail to make any other payment when due under this Agreement.

**Property.** The prospect of payment, performance, or realization of the Property is significantly impaired.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. If I am in default, this is what Lender may do, in addition to any other rights Lender may have:

**Accelerate Indebtedness.** Lender may declare all Indebtedness immediately due and payable, without notice.

**Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law, as limited by the Kansas Uniform Consumer Credit Code. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me.

**Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair and sale. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property.

**Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me, and other persons as required by law, reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition, except as otherwise required by applicable law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (1) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (2) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (4) I agree that this Agreement is the best evidence of my agreements with Lender.

**Attorneys' Fees; Expenses.** Lender may hire or pay someone else who is not Lender's salaried employee to help enforce this Agreement or to collect the Indebtedness, and I shall pay the costs and expenses of such enforcement. Costs and expenses include all reasonable costs incurred in the collection of the Indebtedness, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees nor shall such costs be in excess of fifteen percent (15%) of the unpaid debt after default.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Kansas.

**Choice of Venue.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Johnson County, State of Kansas.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, I agree to keep Lender informed at all times of my current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be my responsibility to tell the others of the notice from Lender.

**No Waiver by Lender.** I understand Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor. I waive all rights of exemption from execution or similar law in the Property, and I agree that the rights of Lender in the Property under this Agreement are prior to my rights while this Agreement remains in effect.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

**Borrower.** The word "Borrower" means Blair H Auld and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Grantor.** The word "Grantor" means Blair H Auld.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which I am responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means The First National Bank of Olathe, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated May 1, 2009, in the principal amount of $58,104.00 from Blair H Auld to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of my right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MAY 1, 2009.

This Notice is required by Kansas law. In this Notice the term "you" means the Grantor named above.

**NOTICE TO CONSUMER:** 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Agreement. 3. You may prepay the unpaid balance at any time without penalty.

GRANTOR:

X _____
Blair H Auld

LENDER:

THE FIRST NATIONAL BANK OF OLATHE

By: _____
Deborah Newton, Retail Banking Officer

LASER PRO Lending, Ver. 5.44.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009   All Rights Reserved.  - KS  N:\CFI\LPL\C30.FC  TR-1000004  PR-55